**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | | |
|---|---|---|
| SUUNTO USA INC. | : | |
| Plaintiff, | : | |
| v. | : | |
| U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES of AMERICA | : | Court No. 26-03889 |
| Defendants. | : | |

**COMPLAINT**

Suunto USA Inc., ("Plaintiff"), by and through its attorneys Barnes, Richardson & Colburn, LLP, hereby alleges the following:

**STATEMENT OF THE CASE**

1. This action challenges the imposition of import duties pursuant to several Executive Orders issued by President Donald J. Trump, and which assert authority for such actions under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 17O1 *et seq*., (hereafter the "IEEPA Duties"). Specifically, Plaintiff alleges that the Defendants' imposition and collection of the IEEPA Duties have been, and remain, illegal, unconstitutional and otherwise contrary to law.

2. Plaintiff is an importer of precision instruments, watches, and other articles as well as other products from various countries, including but not limited to Finland and China.

3. Pursuant to Executive Orders issued by President Trump on various dates on or after February 4, 2025, which asserted authority under the IEEPA to impose tariffs against certain countries, the United States commenced assessing the IEEPA duties on imported goods, including goods imported by Plaintiff.

4. In accordance with the Executive Orders, the corresponding amendments to the Harmonized Tariff Schedule of the United States ("HTSUS"), and guidance issued by U.S. Customs and Border Protection (CBP), Plaintiff deposited IEEPA Duties with CBP as required in its capacity as the importer of record of the imported merchandise. Based on the statutory requirement that entries of imported merchandise, unless extended, "liquidate" within one year, thus setting the final amount of duty owed on a particular entry, (*see* 19 U.S.C. § 1504(a)), and consistent with CBP's practice of liquidating entries within a 314 day liquidation cycle, entries subject to IEEPA Duties began liquidating on or about December 15, 2025, including entries made by Plaintiff as importer of record.

5. On February 20, 2026, the U.S. Supreme Court struck down the IEEPA Duties, holding that "IEEPA does not authorize the President to impose tariffs." *See, Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

6. Plaintiff seeks an order from this Court granting the relief necessary to ensure that Plaintiff secures a refund of all IEEPA duties finally determined to have been unlawfully imposed and collected, as well as pre-judgment and post-judgment interest as provided by law.

7. That relief includes:

a. A declaration that the IEPPA Duties were unlawfully imposed and collected;

b. An injunction preventing CBP from further collection of the IEPPA Duties; and,

c. An order requiring CBP to refund all IEPPA duties Plaintiff has deposited, or will be required to deposit, with interest as provided by law.

**PARTIES**

8. Plaintiff is a U.S. company incorporated in Delaware that served as the importer of record of entries subject to the IEEPA Duties. As such, it deposited IEEPA duties with CBP in connection with entries of merchandise for which it was the importer of record

9. Defendant the United States of America is the federal government to which the disputed IEEPA Duties were paid and is the statutory defendant under 28 U.S.C. § 1581 (i) and 5 U.S.C. § 702.

10. Defendant United States Customs and Border Protection is the federal agency that administers, enforces, and collected the IEEPA Duties, including the IEEPA duties paid by Plaintiff.

11. Defendant Rodney S. Scott is the Commissioner of CBP, in which capacity he oversees CBP's administration, enforcement and collection of the IEEPA Duties, and is the individual who will effectuate the relief sought in this action.

**JURISDICTION AND STANDING**

12. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B). *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1328-31 (Fed. Cir. 2025), *cert granted*, No. 25-250, 2025 U.S. Lexis 2782 (U.S. Sept. 9, 2025). In such actions, the Court possesses all powers in law and equity and can order a money judgment against the United States and other appropriate relief, including declaratory judgments, injunctions, remands and mandamuses. 28 U.S.C. §§ 2643(a)(1) and (c)(1).

13. Plaintiff has standing to bring this action because it was the importer of record of merchandise imported into the United States subject to the IEEPA Duties. It paid IEEPA Duties to the Defendants and thus suffered injury because of the Defendant's unlawful collection of the IEEPA Duties, an injury that will be redressed by the relief requested in this Complaint. Exhibit 1 herewith is a list of entries made by Plaintiff with unrefunded IEEPA tariffs as of this filing. Exhibit 1 is not intended to be exhaustive and Plaintiff seeks refunds, with interest, of all IEEPA duties it paid and has not yet been refunded.

**TIMELINESS**

14. An action under 28 U.S.C. § 1581(i) must be brought within two years after the cause of action first accrues. 28 U.S.C. § 2636(i).

15. The initial IEEPA Duties covering products imported from Canada, Mexico, and China took effect for merchandise imported on or after 12:01 a.m. eastern time on February 4, 2025. See, Executive Order 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Executive Order 14193*, Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border,* 90 Fed. Reg. 9,113 (Feb. 7, 2025); Executive Order 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb 7, 2025).

16. Plaintiff commenced this action within two years of February 4, 2025, the earliest date on which the cause of action can arguably have accrued. Therefore, this matter is timely.

**RELEVANT FACTS AND LAW**

The IEEPA Tariffs

17. On February 1, 2025, President Trump issued Executive Order 14193, wherein he imposed a 25 percent *ad valorem* tariff on products of Canada, citing the IEEPA as authority for the tariff. *See*, Executive Order 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across our Northern Border*, 90 Fed. Reg. 9113 (Feb. 7, 2025). On July 31, 2025, President Trump issued Executive Order 14325, increasing the tariff on Canadian products to 35 percent *ad valorem*, citing both the IEEPA and the National Emergencies Act, 50 U.S.C. § 1601 ("NEA") as authority for his action. See, Executive Order 14325, *Amendment to Duties to Address the Flow of Illicit Drugs Across our Northern Border*, 90 Fed. Reg. 37958 (Aug. 6, 2025).

18. On February 1, 2025, President Trump issued Executive Order 14194, wherein he imposed a 25 percent *ad valorem* tariff on products of Mexico origin, citing the IEEPA as authority. *See*, Executive Order 14194*, Imposing Duties to Address the Situation at our Southern Border*, 90 Fed. Reg. 9117 (Feb. 7, 2025).

19. On February 1, 2025, President Trump issued Executive Order 14195, wherein he imposed a 10 percent *ad valorem* tariff on products of Chinese origin, citing the IEEPA as authority. *See*, Executive Order 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 7, 2025).

20. On February 5, 2025, President Trump issued Executive Order 14200, wherein he amended EO 14195 to temporarily allow the continued application of the *de minimis* rule, 19 U.S.C. § 1321, for goods from China, citing both the IEEPA and the NEA as authority for his action. See, Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,277 (Feb. 11, 2025).

21. On March 3, 2025, President Trump issued Executive Order 14288, increasing the IEEPA-based tariff on Chinese origin goods imposed under Executive Orde 14195 to 20 percent *ad valorem*, citing the IEEPA, the NEA and other statutes as authority for the increase to the tariff. *See,* Executive Order 14288, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 11,463 (Mar. 7, 2025). On November 4, 2025, President Trump issued Executive Order 14357, where he decreased the IEEPA-based tariff on Chinese origin goods imposed under Executive Order 14195 and increased by Executive Order 14288 back to 10 percent *ad valorem*, citing the IEEPA, the NEA and other statutes as authority for the decrease to this tariff. *See*, Executive Order 14357, *Modifying Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 50725 (Nov. 7, 2025).

22. On April 2, 2025, President Trump issued Executive Order 14257, wherein he imposed a 10 percent *ad valorem* tariff on products from all trading partners, effective April 5, 2025, and an *ad valorem* tariff with rates ranging from 11 percent to 50 percent on products from trading partners listed on Annex 1 to the order, effective April 9, 2025, citing both the IEEPA and the NEA as authority. *See*, Executive Order 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

23. On April 8, 2025, President Trump issued Executive Order 14259, wherein he increased the *ad valorem* tariff on Chinese origin products from 34 percent to 84 percent, citing the IEEPA, the NEA and other statutes as authority for increasing the tariff. *See*, Executive Order 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

24. On April 9, 2025, President Trump issued Executive Order 14266, wherein he suspended for a 90-day period, except with respect to Chinese origin products, the *ad valorem* duty rates imposed on trading partners as enumerated in Annex I to Executive Order 14257 and increased the ad valorem tariff on products of China from 84 percent to 125 percent, citing the IEEPA, the NEA and other statutes as authority for his actions. *See*, Executive Order 14226, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (April 15, 2025). On July 7, 2025, President Trump extended this suspension to August 1, 2025, again citing the IEEPA, the NEA and other statutes as authority. *See*, Executive Order 14316, *Extending the Modification of the Reciprocal Tariff Rates*, 90 Fed. Reg. 30,823 (July 10, 2025).

25. On May 12, 2025, President Trump issued Executive Order 14298, wherein he reduced the *ad valorem* duty rate on Chinese origin goods from 125 percent to 34 percent and suspended it for 90 days during which time Chinese origin goods were dutiable at 10 percent *ad valorem*, citing the IEEPA, the NEA and other statutes as authority. *See*, Executive Order 14298, *Modifying Reciprocal Tariff Rates to Reflect Discussions with the People's Republic of China*, 90 Fed. Reg. 21,831 (May 21, 2025). On August 11, 2025, President Trump extended this suspension to November 10, 2025, again citing the IEEPA, the NEA and other statutes as authority. *See*, Executive Order 14334, *Further Modifying Reciprocal Tariff Rates to Reflect Ongoing Discussions with the People's Republic of China*, 90 Fed. Reg. 39,305 (August 14, 2025). On November 4, 2025, President Trump issued Executive Order 14352, extending this suspension until November 10, 2026, again citing the IEEPA, the NEA and other statutes as authority for his actions. *See*, Executive Order 14352, *Modifying Reciprocal Tariff Rates*

*Consistent with the Economic and Trade Arrangement Between the United States and the People's Republic of China*, 90 Fed. Reg. 50,727 (Nov. 7, 2025).

26. On July 30, 2025, President Trump issued Executive Order 14323, wherein he imposed an additional 40 percent *ad valorem* tariff on certain goods originating in Brazil, citing the IEEPA, the NEA and other statutes as authority for his actions. *See*, Executive Order 14323, *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37739.

27. On July 31, 2025, President Trump issued Executive Order 14326, wherein he maintained a 10 percent *ad valorem* tariff on products from certain trading partners while imposing new *ad valorem* tariffs with rates ranging from 15 percent to 41 percent on products from other trading partners listed on Annex 1 to that order, effective August 8, 2025, citing the IEEPA, the NEA, and other statutes as authority for the new tariffs. *See*, Executive Order 14326, *Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 37,963 (Aug. 6, 2025).

28. On August 6, 2025, President Trump issued Executive Order 14329, wherein he imposed an additional 25 percent *ad valorem* tariff on certain goods originating in India, citing the IEEPA, the NEA and other statutes as authority for his actions. *See*, Executive Order 14329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38,701 (Aug. 11, 2025).

29. On February 20, 2026, the U.S. Supreme Court struck down the IEEPA Duties. *See, Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

Amendments to the HTSUS

30. The HTSUS is the statute that sets forth the rates of duty applicable to merchandise imported into the United States. 19 U.S.C. § 1202. *See*, *Schlumberger Tech. Corp. v. United*

*States*, 845 F.3d 1158, 1163 (Fed. Cir. 2017) (The HTSUS "shall be considered to be statutory provisions of law for all purposes."); *see also*, 19 U.S.C. § 3004(c)(1).

31. Each modification or change made to the HTSUS by the President under authority of law is also considered to be statutory. 19 U.S.C. § 3004(c)(1)(C).

32. The merchandise subject to the IEEPA Duties, the applicable rates, exclusions, and other information implementing each of the IEEPA Duties is set forth in the HTSUS as amended to reflect the relevant Presidential Executive Orders.

33. Therefore, this action arises under the HTSUS, which constitutes a law of the United States providing for revenue from imports or tonnage or providing for tariffs, duties, fees, or other taxes upon the importation merchandise for reasons other than the raising of revenue within the meaning of 29 U.S.C. § 1581(i).

<u>Congress Possesses the Constitutional Authority to Impose Tariffs</u>

34. The United States Constitution, Art. I, § 8, cl. 1 provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises…" and "[t]o regulate Commerce with foreign Nations." *Id.* at cl. 3.

35. Any Congressional delegation of taxing authority to the President must include an "intelligible principle" to guide and limit the President's exercise of that legislative function. *FCC v. Consumers' Rsch*., 606 U.S. 656, 673 (2025) ("To distinguish between the permissible and the impermissible in this sphere, we have long asked whether Congress has set out an 'intelligible principle' to guide what it has given the agency to do.).

36. When Congress delegates powers to address issues of deep political or economic consequence, it must do so through a clear statement to that effect. *Biden v. Nebraska*, 600 U.S. 477, 506 (2023).

37. The IEEPA contains no reference to tariffs, duties, or taxes among the list of powers delegated to the President to address international economic emergencies.

38. Because the IEEPA lacks a clear statement of delegation to the President of the authority to impose tariffs and because it lacks any intelligible principle guiding the exercise of tariff authority, the tariffs imposed by the challenged Executive Orders were not authorized by a legally sustainable delegation of Congress' power to lay and collect Customs duties, with the resulting collection of the IEEPA Duties being unconstitutional.

Multiple Federal Courts Have Held the IEEPA Duties to be Illegally Imposed

39. This Court previously considered the legality of these tariffs in *V.O.S. Selections* and, in a unanimous three-judge panel decision, held that the President exceeded the authority Congress delegated to him under the IEEPA. The Court declared the tariffs invalid and enjoined further collection. *V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d 1350, 1383 (CIT 2025).

40. The United States Court of Appeals for the Federal Circuit, sitting *en banc*, affirmed this Court's decision. *V.O.S. Selections, Inc.,* 149 F.4th 1312, 1340 (Fed. Cir. 2025).

41. The United States District Court for the District of Columbia reached the same conclusion in *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209, 233 (D.D.C. 2025), *cert. granted before judgment*, 2025 U.S. LEXIS 2783, No. 24-1287 (U.S. Sept. 9, 2025).

42. On February 20, 2026, the U.S. Supreme Court issued its opinion in both in *V.O.S. Selections* and *Learning Resources*, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20.

## STATEMENT OF CLAIMS

### COUNT I – THE CHALLENGED IEEPA TARIFFS ARE WITHOUT LAWFUL SUPPORT AND ARE UNENFORCEABLE

43. Plaintiff hereby incorporated by reference paragraphs 1-42 of this Complaint.

44. Consistent with the holdings of the U.S. Supreme Court in *Learning Resources*, and this Court and the Court of Appeals for the Federal Circuit in *V.O.S. Selections*, the IEEPA does not include a valid delegation authorizing the President to impose the IEEPA Duties, and thus the Executive Orders exceeded the President's authority under the IEEPA.

45. Plaintiff seeks an order from this Court applying the binding decision of the U.S. Supreme Court and the Federal Circuit finding that the challenged IEEPA Duties are unlawful, enjoining the CBP from any further collection of IEEPA Duties, and ordering CBP to refund all IEEPA Duties plaintiff has deposited, with interest as provided by law.

### COUNT II – THE EXECUTIVE ORDERS AND IEEPA DUTIES ARE UNCONSTITUTIONAL

46. Plaintiff hereby incorporated by reference paragraphs 1-42 of this Complaint.

47. The authority to lay and collect taxes, duties, imposts and excises and the power to regulate foreign commerce rests with Congress. Art. I, § 8 cls. 1 and 3.

48. The imposition of the challenged IEEPA Duties through Executive Orders is an unprecedented exercise of power with vast economic and political significance.

49. Absent clear delegation from Congress authorizing the President the power to impose the IEEPA Duties via Executive Orders, those actions by the President would be predicated on an unconstitutional assumption of legislative power.

50. Congress uses explicit language when delegating tariff authority, but the IEEPA contains no such language. *See, Learning Resources*, slip op. at 20.

51. Thus, the President's use of the IEEPA as the foundation for imposing the IEEPA Duties through the Executive Orders was an unconstitutional assumption of Congress's legislative power to lay and collect duties and as such were unlawfully issued.

52. Plaintiff, having paid the IEEPA Duties, seeks a declaration that the imposition of the IEEPA Duties was unconstitutional and for that reason, all IEEPA Duties paid by Plaintiff must be refunded to Plaintiff, with interest as provided by law.

**COUNT III – DECLARATORY RELIEF**

53. Plaintiff hereby incorporated by reference paragraphs 1-42 of this Complaint

54. Plaintiff is the importer of record of merchandise imported into the United States and has deposited with CBP duties resulting from the challenged Executive Orders and IEEPA Duties.

55. Plaintiff has, therefore, been injured by the imposition and collection of unconstitutional and invalid IEEPA Duties.

56. The challenge to the validity of the IEEPA Duties is an actual controversy before this Court.

57. This Court has authority under 28 U.S.C. § 2201(a) to declare plaintiff's rights and legal relations with respect the challenged IEEPA Duties.

58. This Court must declare that the assessments of IEEPA Duties against the Plaintiff, and the subsequent collection of the IEEPA Duties by CBP, were unlawful for the reasons stated in this Complaint, and order a refund to Plaintiff of the IEEPA Duties it paid, with interest as provided by law.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

a. Find and declare that IEEPA does not authorize the President to impose the challenged IEEPA Duties;

b. Find and declare that the assessments and collections of the challenged IEEPA Duties were unconstitutional, *ultra vires* and otherwise contrary to law, and therefore, void *ab initio*;

c. Enjoin CBP from further collecting IEEPA Duties with respect to Plaintiff's importations;

d. Order CBP to refund all challenged IEEPA Duties Plaintiff has deposited with CBP to date and will deposit with CBP in the future, with interest as provided by law, including all entries listed in Exhibit 1 and any other entries by Plaintiff that may be similarly situated;

e. Award attorneys fees and costs; and

f. Provide such other relief as the Court deems proper and necessary.

Respectfully submitted,

/s/ David G. Forgue
David G. Forgue

**Barnes, Richardson & Colburn, LLP**
303 East Wacker Drive
Suite 305
Chicago, Illinois 60601
O: 312 297-9555
E: dforgue@barnesrichardson.com

Dated: September 4, 2026